**EXHIBIT L**

March 5, 2026

Todd M. Lyons
Senior Official Performing the Duties of Director
Immigration and Customs Enforcement
Department of Homeland Security
icesustainability@ice.dhs.gov
*Via Email*

>     Re:    **Early Notice and Public Review of a Proposed Activity in a 100- to 500-Year Floodplain – Hagerstown, Maryland**

Dear Mr. Lyons:

Potomac Riverkeeper Network, Washington County Council of Churches dba Hagerstown Area Religious Council, and Washington County Indivisible submit these comments in response to the above-mentioned Notice of Immigration and Customs Enforcement's intent to "acquire and retrofit the existing warehouse facility at 10900 Hopewell Road, Hagerstown, Maryland, for use as a Detention Processing Center."

Potomac Riverkeeper Network (PRKN) was established in 2000 to advocate for clean water in the Potomac River and its tributaries. Its goals include advocating for public health and safety and furthering the Potomac River's economic, recreational, and aesthetic value to the over six million people who live in the Potomac River Basin and to the many others who visit it, consume fish and shellfish from it, and recreate in and on its waters. PRKN's mission is to protect the right to clean water for all communities and all those who live in and rely upon the Potomac and Shenandoah watersheds by stopping pollution; making drinking water safe; protecting healthy river habitats and the livelihoods that depend on its fisheries; and enhancing its use and enjoyment for all.

Hagerstown Area Religious Council (HARC) is a coalition of houses of worship with a mission to embody mercy, justice, and love as diverse faith partners in Washington County, Maryland. Embedded in the Washington County community since 1946, HARC believes in the power of faith communities working together and believes that all people have equal value and are loved by God. HARC seeks justice for those who are not treated equally or given equal value by our broken world, including vulnerable migrants and vulnerable communities such as Williamsport, which is known for high poverty levels.

Washington County Indivisible was founded in February 2025 as a local chapter of Indivisible, a national organization founded in late 2016 to provide a framework for grassroots local advocacy and the defense of democracy. Washington County Indivisible has more than 300 active members who participate in local protests, write letters, advocate with elected officials, provide community care, and organize educational forums on issues including environmentalism.

For the reasons below, we request that the Department of Homeland Security (DHS):
(1) supplement the record with the information necessary for the public to review and comment on its proposed activity; (2) extend the comment period by 30 days; and (3) halt any development or retrofitting of the warehouse until it has provided adequate notice and an opportunity to comment. If DHS declines to take the proposed steps to ensure meaningful opportunity for public

engagement, we submit the below preliminary comments based on the limited information provided in the Notice.

## I.      DHS's Notice is procedurally inadequate.

DHS's Notice fails to provide the public with meaningful notice or opportunity to comment in violation of the National Environmental Policy Act, 42 U.S.C. §§ 4321–4366f, and Executive Order 11988, 42 Fed. Reg. 26951 (May 25, 1977), as amended. Under NEPA, DHS was required, at a minimum, to prepare an Environmental Assessment given the potential for significant impact on the human environment. *See* 42 U.S.C. § 4336(b)(2). In fact, the retrofitting of a warehouse for use as an around-the-clock immigration detention facility for 1,500 people (plus staff) is likely to significantly affect the quality of the human environment, therefore requiring that the agency prepare a detailed Environmental Impact Statement that addresses, among other things, the reasonably foreseeable environmental effects of the proposed action, a reasonable range of alternatives to the proposed action, and any "irreversible and irretrievable commitments of Federal resources which would be involved in the proposed agency action should it be implemented." *Id.* § 4332(C)(v); *see id.* § 4336(b)(1).

DHS's NEPA Guidance requires public involvement in the NEPA process for proposed DHS actions. This can include providing an opportunity during the scoping process or in response to a draft Environmental Assessment with a public comment period of at least 30 days. DHS's NEPA Guidance requires that public involvement start early, continue throughout the NEPA process, and "ensure that potentially interested parties . . . have an opportunity to provide input in a manner that could have a practical influence on proposed DHS actions before decisions are made."[1]

Executive Order 11988 requires that DHS facilitate "early public review of any plans or proposals for actions in floodplains . . . ." EO 11988 § 2(a)(4). The agency may proceed with an action only if it "finds that the only practicable alternative consistent with the law and with the policy set forth in this Order requires siting in a floodplain . . . ." *Id.* § 2(a)(2). If the agency makes such a finding, it "shall, ***prior to taking action*** . . . prepare ***and circulate*** a notice containing an explanation of why the action is proposed to be located in the floodplain." *Id.* (emphases added).

DHS's Notice complies with none of these requirements and, instead, is tailored to evade public review. DHS's proposed action is "to acquire and retrofit the existing warehouse facility at 10900 Hopewell Road, Hagerstown, Maryland, for use as a Detention Processing Center." But DHS purchased the warehouse for use as a detention center on January 16, 2026 and published this Notice on its website over a month later on February 27, 2026. Because DHS has already commenced the activity it purports to be notifying the public of, this "notice" is, in fact, a post-

---

[1] Dep't of Homeland Sec., Instruction Manual 023-01-001-01, Revision 01, Implementation of the National Environmental Policy Act (NEPA) IV-6 (Nov. 6, 2014), https://www.fema.gov/sites/default/files/2020-07/fema_dhs_instruction_manual_023-01-001-01.pdf.

decision announcement. To our knowledge, DHS prepared neither an Environmental Impact Statement nor an Environmental Assessment for this project. *See* 42 U.S.C. § 4336(b)(1), (2). DHS's decision to act first, and review later, violates NEPA. NEPA review must be undertaken while a major federal action is "proposed," not after it is undertaken. *Id.* § 4336(a); *see id.* § 4332(C)(v) (review must address the "irreversible and irretrievable commitments of Federal resources which would be involved in the proposed agency action *should it be implemented*") (emphasis added)). Similarly, DHS failed to provide "early public review of any plans or proposals for actions in floodplains," EO 11988 at § 2(a)(4), or to "prepare … a notice" *before* taking action, *id.* at § 2(a)(2). To our knowledge, DHS failed to "circulate [the] notice to the public" and posted it only to its website. *Id.* § 2(a)(2). Finally, providing the public only six days for review and comment is wholly inadequate for meaningful and substantive public engagement.

## II.  DHS's Notice is substantively inadequate.

The Notice lacks the information necessary for the public to understand the proposed activity or whether it complies with legal requirements under Executive Order 11988, or bedrock environmental laws, including NEPA, the Clean Air Act, the Clean Water Act, and others.

A non-exhaustive list of substantive inadequacies includes:

- Minimizing Potential Harm: EO 11988 requires that the agency "design or modify its action in order to minimize potential harm to or within the floodplain." EO 11988 § 2(a)(2). The dearth of information provided about ICE's plans to convert the facility makes it impossible to gauge whether it has complied with this obligation.

- Plan For Human Habitation: Although the Notice outlines the intent to build a comprehensive security apparatus, including fencing, security checkpoints, cameras, and telecommunications cabling, it is silent on the plan for construction required to convert a commercial warehouse to a 1500-bed facility fit for human habitation. In the absence of such information, it is impossible to reasonably assess what impact such construction will have on the floodplain or the impact the floodplain will have on the construction or operation of the detention center.

- Wastewater: The Notice acknowledges that "preliminary engineering indicates that limited upgrades to the existing sanitary lateral or connection point may be required to accommodate projected wastewater flows." It fails, however, to include any engineering report and gives no indication as to whether the local water and sewer authority has been consulted about potential necessary upgrades or permits. Given that the agency proposes to house 1,500 people within the converted warehouse—nearly the equivalent of the entire population of the neighboring town of Williamsport—DHS must provide for public review a comprehensive analysis of what impact the proposed facility would have on the existing water and sewer infrastructure.

- Stormwater: The Notice states that "[t]he site is served by an existing engineered stormwater system that includes onsite catch basins and manholes that collect runoff from building

downspouts and paved surfaces and route it to retention ponds in the southern and western portions of the property. The retention ponds provide temporary storage, flow attenuation, and controlled discharge to Semple Run Creek." This suggests there is a direct discharge into the Creek, which would require a National Pollutant Discharge Elimination System permit, which the Notice makes no mention of. Instead, the Notice simply states without additional information that "ICE will routinely assess the condition and functionality of the stormwater management system and replace components in kind when they are determined to be beyond their useful service life."

- <u>Solid Waste Treatment:</u> The Notice makes no mention of the impacts of the project on solid waste treatment and output, possible increase in toxic exposures from chemical use including those used for cleaning and sanitation, or any of the other natural consequences of detaining 1,500 people in a facility that was not built for human habitation.

- <u>Nearby Waterways:</u> The Notice makes no mention of the impacts of the proposed detention facility on the nearby waterways including Semple Run, which is confluent to Conococheague Creek, a waterway designated by the State of Maryland for recreational trout fishing and public drinking water supply.

- <u>Emergency Resilience Measures:</u> The Notice states, without elaboration, that "ICE will also incorporate facility-level emergency resilience measures, including providing backup power and automatic transfer capability sufficient to support the facility during flood conditions." It includes no information about the source and environmental impacts of backup power (including, if applicable, the possible spill and water quality impacts associated with on-site diesel generation), a flood management system, or risks to communities located within the floodplain.

By law, the agency must "[r]igorously explore and objectively evaluate all reasonable alternatives" to that action. *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 623 F.3d 633, 642 (9th Cir. 2010) (citation omitted); *see* EO 11988 § 2(a); 42 U.S.C. § 4332(C)(iii). Here, ICE mentions its consideration of other sites and quickly dismisses them as less favorable for their intended use. Its stated "No Action Alternative" is that "ICE would continue relying on existing facilities that are undersized and do not meet current operational needs." But a true "no action alternative" would be to maintain the status quo, an alternative this Notice does not consider.

ICE has also failed to consider the alternative of adapting its own practices to "meet current operational needs." Committed though it may be to developing mass detention warehouses that operate "like [Amazon] Prime, but with human beings,"[2] ICE is most certainly not required to detain the vast majority of individuals it encounters and charges with removability. Its own policy

---

[2] Marina Dunbar, *Ice director wants to run deportations like 'Amazon Prime for human beings'*, The Guardian (Apr. 9, 2025), https://www.theguardian.com/us-news/2025/apr/09/ice-todd-lyons-deporation-amazon.

choices are entirely to blame for the "need" for the additional detention space it now seeks to create in this highly unsuitable location. The warehouse site is not fit for human habitation, and ICE has utterly failed to consider the environmental—to say nothing of the human—impacts.

### III.    Conclusion

For the reasons above, the Notice and the time provided for public comment are insufficient. DHS must supplement the record with the information necessary for the public to review and comment on its proposed activity, extend the comment period by 30 days, and halt any development or retrofitting of the warehouse until it has provided adequate notice and an opportunity to comment.

Sincerely,

Deena Tumeh
Rachel Rintelmann
Susan Stevens Miller
Earthjustice
dtumeh@earthjustice.org
rrintelmann@earthjustice.org
smiller@earthjustice.org
*Counsel for Potomac Riverkeeper Network,*
*Washington County Council of Churches dba*
*Hagerstown Area Religious Council, and*
*Washington County Indivisible*